## MACKENZIE v. HARE ET AL., BOARD OF ELECTION OF SAN FRANCISCO.

### ERROR TO THE SUPREME COURT OF THE STATE OF CALIFORNIA.

No. 79.  Argued November 11, 12, 1915.—Decided December 6, 1915.

In construing a statute, whatever was said or given prominence in debate gives way to its actual language as passed; all reasons that induced its enactment and all of its purposes must be supposed to be satisfied and expressed by its words as finally enacted.

Under the Constitution every person born in the United States is a citizen thereof.

The provisions in § 3 of the Citizenship Act of March 2, 1907, that any American woman who marries a foreigner takes the nationality of her husband, is not limited as to place or effect prior to the termination of the marital relation.

Where an act of Congress is explicit and circumstantial, as is § 3 of the Citizenship Act of 1907, it would transcend judicial power to insert limitations or conditions upon disputable considerations.

Whatever may have been the law of England and the original law of this country as to perpetual allegiance of persons to the land of their birth, Congress by the act of 1868, now Rev. Stat. 1999, explicitly declared the right of expatriation to have been the law.

The identity of husband and wife is an ancient principle of our jurisdiction, and is still retained notwithstanding much relaxation thereof;

and while it has purpose, if not necessity, in domestic policy, it has greater purpose, and possibly greater necessity, in international policy.

As a Government, the United States is invested with all the attributes of sovereignty and has the character and powers of nationality, especially those concerning relations and intercourse with foreign powers.

Citizenship is of tangible worth, but the possessor thereof may voluntarily renounce it even though Congress may not be able to arbitrarily impose such renunciation.

Marriage of an American woman with a foreigner may involve national complications of like kind as physical expatriation may involve and is therefore within the control of Congress.

Marriage of an American woman with a foreigner is tantamount to voluntary expatriation; and Congress may, without exceeding its powers, make it so, as it has in fact done, by the act of March 2, 1907.

165 California, 776, affirmed.

THE facts, which involve the construction and constitutionality of the Citizenship Act of March 2, 1907, and the status as to citizenship of a woman born under the jurisdiction of the United States and married to a native of a foreign State but residing in the United States, are stated in the opinion.

*Mr. Wilbur T. U'Ren* for plaintiff in error:

It was not the intention of Congress to deprive women remaining within jurisdiction of United States of citizenship. *David Levy*, 1 Bart. El. Cas. 41; *In re Wildberger*, 204 Fed. Rep. 508; Report No. 4784, 59th Cong., 1st Sess., contained in House Doc. 326, 59th Cong., 2d Sess., at p. 1.

If the act of March 2, 1907, applies to citizens remaining within jurisdiction of United States, it is null and void. Plaintiff is a citizen of United States by birth. *Inglis* v. *Sailors' Snug Harbor*, 3 Pet. 99; *United States* v. *Wong Kim Ark*, 169 U. S. 649; 7 Cyc. 137.

Sex is not involved in the question of citizenship. Abbott, Law Dict.; *In re Lockwood*, 154 U. S. 116; *Minor* v. *Happersett*, 21 Wall. 162; *Ritchie* v. *People*, 155 Illinois,

98; *Shanks* v. *Dupont*, 3 Pet. 242; *State* v. *Howard County*, 90 Missouri, 593.

As to loss of citizenship see act of March 3, 1865, 13 Stats. 490; Const. of United States, Art. 8, § 1; *Gotchens* v. *Matthewson*, 61 N. Y. 420; *Huber* v. *Reily*, 53 Pa. St. 112; *In re Look Tin Sing*, 21 Fed. Rep. 905; *Kurtz* v. *Moffitt*, 115 U. S. 501; *Severance* v. *Healy*, 50 N. H. 448; *State* v. *Symonds*, 57 Maine, 148.

For definitions of expatriation, see Black's Law Dict.; Bouvier's Law Dict.; Standard Dict.; Webster's Universal Dict.; Morse on Citizenship, p. 114, § 82.

As to the right of expatriation, see Brannon's Fourteenth Amendment, p. 21; *In re Look Tin Sing*, 21 Fed. Rep. 907; 9 Fed. Stats. Ann., pp. 390, 391; 9 Op. Attys. Gen. 62.

As to the nature of expatriation, see *Brown* v. *Dexter*, 66 California, 39; Rev. Stats., § 1999; 7 Cyc. 144.

Actual removal is a necessary element of expatriation. *Juando* v. *Taylor*, Fed. Cas. No. 7558; *S. C.*, 2 Paine, 652; *Hardy* v. *De Leon*, 5 Texas, 211; House Doc. 326, 59th Cong., 2d Sess., p. 27; 6 Am. & Eng. Ency. of Law, p. 31; 7 Cyc., pp. 145, 146, and cases cited; 9 Op. Attys. Gen. 62; 14 Op., *Id.* 295.

As to nature of allegiance, see *Ainslie* v. *Martin*, 9 Massachusetts, 454; *Inglis* v. *Sailors' Snug Harbor*, 3 Pet. 99; *Burkett* v. *McCarty*, 73 Kentucky (10 Bush), 758; Standard Dict.

As to power of Congress over citizenship, see *Ainslie* v. *Martin*, 9 Massachusetts, 454; *Brown* v. *Dexter*, 66 California, 39; *Burkett* v. *McCarty*, 73 Kentucky (10 Bush), 758; *Dorr* v. *United States*, 195 U. S. 140; *In re Look Tin Sing*, 21 Fed. Rep. 905; *Jennes* v. *Landes*, 84 Fed. Rep. 73; *Martin* v. *Hunt*, 1 Wheat. 326; *McCulloch* v. *Maryland*, 4 Wheat. 405; *Osborn* v. *Bank of United States*, 9 Wheat. 738; Rev. Stats., § 1999; *Scott* v. *Sanford*, 19 How. 393; Const. United States, Par. 4, § 8, art. 1; *United States* v.

*Crook,* 5 Dill. 453; *United States* v. *Wong Kim Ark,* 169 U. S. 703.

The plaintiff's consent cannot be implied. Act of Congress, March 6, 1820; *Scott* v. *Sanford,* 19 How. 390.

Marriage in itself is not an act of expatriation. *Comitis* v. *Parkerson,* 56 Fed. Rep. 556; *Beck* v. *Magillis,* 9 Barb. 35; Brannan's Fourteenth Amendment, p. 28; *Pequinot* v. *Detroit,* 16 Fed. Rep. 211; Report of Committee on Citizenship, p. 50; *Ruckgaber* v. *Moore,* 104 Fed. Rep. 947; *Shanks* v. *Dupont,* 3 Pet. 242; *Wollenberg* v. *Mo. Pac. R. R.,* 159 Fed. Rep. 217; 10 Op. Attys. Gen., 321; 15 *Id.* 599.

As to the doctrine of merging of identity, see act of March 2, 1907; *Comitis* v. *Parkerson,* 56 Fed. Rep. 558; *In re Rionda,* 164 Fed. Rep. 368; Note, 22 L. R. A. 150, 152; *Shanks* v. *Dupont,* 3 Pet. 242; *United States* v. *Cohn,* 179 Fed. Rep. 835; *Williamson* v. *Ostenson,* 232 U. S. 619.

Plaintiff's citizenship is not dependent upon international law. Act of March 2, 1907; *Scott* v. *Sanford,* 19 How. 393; *In re Look Tin Sing,* 21 Fed. Rep. 905; *Shanks* v. *Dupont,* 3 Pet. 242; *United States* v. *Wong Kim Ark,* 169 U. S. 660.

The following cases relied on by defendants can be distinguished: *Comitis* v. *Parkerson,* 56 Fed. Rep, 556; *Scott* v. *Sanford,* 19 How. 417; *In re Rionda,* 164 Fed. Rep. 368; *Kelly* v. *Owen,* 7 Wall. 496; *United States* v. *Cohn,* 179 Fed. Rep. 634; *Gendering* v. *Williams,* 184 Fed. Rep. 322; *United States* v. *Wong Kim Ark,* 169 U. S. 703.

The California court failed to pass upon important points.

*Mr. Thomas V. Cator,* with whom *Mr. Percy V. Long* and *Mr. William McDevitt* were on the brief, for defendant in error:

Congress does not legislate with a view to affect suffrage. Acts of March 2, 1907; February 10, 1855; July 27, 1868; British Statutes of 1844 and 1870; Cockburn on

Nationality, 24; *Comitis* v. *Parkerson,* 56 Fed. Rep. 556; Constitution of California, art. II; *Dorsey* v. *Bingham,* 77 Illinois, 256.

For Department of State instructions, see *Gaum* v. *Hubbard,* 97 Missouri, 321; *Headman* v. *Rose,* 63 Georgia, 458; *Hopkins* v. *Fachant,* 130 Fed. Rep. 829; *Halsey* v. *Beer,* 52 Hun, 366; *In re Rionda,* 164 Fed. Rep. 368; *Kane* v. *McCarthy,* 63 N. Car. 299; *Kelly* v. *Owen,* 7 Wall. 496; *Kirchner* v. *Murray,* 54 Fed. Rep. 621; *Leonard* v. *Grant,* 5 Fed. Rep. 13; 3 Moore, Dig. Int. Law, 453, 454, 456; 14 Op. Atty. 402; *People* v. *Newell,* 38 Hun, 79; *Pequinot* v. *Detroit,* 16 Fed. Rep. 211; Rev. Stats., § 1994; *Ruchgover* v. *Moore,* 104 Fed. Rep. 948; *Shanks* v. *Dupont,* 3 Pet. 242; *Talbor* v. *Jansen,* 3 Dall. 154; *United States* v. *Williams,* 184 Fed. Rep. 322; *United States* v. *Kellar,* 13 Fed. Rep. 82; *United States* v. *Williams,* 173 Fed. Rep. 626; *United States* v. *Cohen,* 179 Fed. Rep. 834; *Wollenberg* v. *Mo. Pac. R. R.,* 159 Fed. Rep. 217; Webster, "Law Citizenship," 298; *Ware* v. *Wisner,* 50 Fed. Rep. 310; *Wong Kim Ark,* 169 U. S. 649; Van Dyne on Naturalization, 229.

For history of the act of March 2, 1907, see act of July 27, 1869; House Doc. No. 326, 59th Cong.; Van Dyne on Naturalization, 256, 336.

As to the Fourteenth Amendment as it bears on this case see Brannan, Fourteenth Amendment, 20; *Comitis* v. *Parkerson,* 56 Fed. Rep. 558, 4 Ency. U. S. Sup. Ct. 135, 311–313; *Ex parte Virginia,* 100 U. S. 313; *In re Look Tin Sing,* 21 Fed. Rep. 910; *Legal Tender Cases,* 12 Wall. 457; *Wong Kim Ark,* 169 U. S. 674.

For expressions of writers and the courts with reference to the power of expatriation see Act of Congress, March 2, 1907; *Comitis* v. *Parkerson,* 56 Fed. Rep. 563; 3 Moore, Dig. Int. Law, 713; *Murray* v. *McCarthy,* 2 Mumford (Va.), 397; President Grant's Message of 1876; *Pequinot* v. *Detroit,* 16 Fed. Rep. 211; *Shanks* v. *Dupont,*

3 Pet. 242; *The Charming Betsey*, 2 Cranch, 120; *Talboi* v. *Jansen*, 3 Dall. 154; Van Dyne, "Citizenship," 272; 2 Wharton, Int. Law Dig. 176.

All writers on the law of citizenship treat marriage as a mode of expatriation. Bouve, "Exclusion of Aliens," 389–90; Brannan's "Fourteenth Amendment," 28; *Burkitt* v. *McCarthy*, 1 Ky. Opinions, 104; Cockburn on Nationality, 24; *Comitis* v. *Parkerson*, 56 Fed. Rep. 558; *Leonard* v. *Grant*, 5 Fed. Rep. 13; 3 Moore, Dig. Int. Law, 448; Van Dyne on Naturalization, 333; Van Dyne, "Citizenship of U. S."; Webster, "Law of Citizenship," 297; 2 Wharton, Int. Law Dig., p. 420.

As to voluntary renunciation, *Kelly* v. *Owen*, 7 Wall. 496; *Leonard* v. *Grant*, 5 Fed. Rep. 11; Rev. Stats. 2172; *United States* v. *Kellar*, 13 Fed. Rep. 84; Van Dyne on Naturalization, 227, 333.

Transfer of allegiance by marriage rests upon international principles, apart from the idea of emigration. Code Napoleon, §§ 12, 19; Law of Holland; House Doc. No. 326, 59th Congress; Ottoman Empire, Law of; *Pequinot* v. *Detroit*, 16 Fed. Rep. 211–217; Russian Civil Code, Art. 1026.

The Act of 1907, as to § 3, was adopted by Congress, for the express purpose of announcing its express confirmation of the doctrine that marriage of a native woman to a foreigner, should operate in the manner, decided in the case of *Pequinot* v. *Detroit*, 16 Fed. Rep. 211, regardless of the residence of the wife; *Comitis* v. *Parkerson*, 56 Fed. Rep. 556; House Doc. No. 326, 59th Congress 33; *In re Rionda*, 164 Fed. Rep. 368; *United States* v. *Cohen*, 179 Fed. Rep. 835.

The transfer of allegiance of a woman marrying a foreigner rests upon international law or comity, and the case of *Shanks* v. *Dupont*, 3 Pet. 242, does not hold that the removal of the wife is necessary; *Pequinot* v. *Detroit*, 16 Fed. Rep. 211.

The claim that at the time of the Statute of 1907, it was the settled law of the United States that an American woman marrying an alien did not lose her citizenship, by reason of said marriage, if she continued to reside within the jurisdiction of the United States, is a misapprehension; *Beck* v. *McGillis*, 9 Barbour, 35; Brannan's "Fourteenth Amendment" 28; *Comitis* v. *Parkerson*, 16 Fed. Rep. 556; *Moore* v. *Tisdale*, 5 B. Mon. (Ky.) 357; 10 Op. Atty. Gen'l, 321; 15 *Id.* 599; *Ruchgover* v. *Moore*, 104 Fed. Rep. 947; *Shanks* v. *Dupont*, 3 Pet. 242.

A woman by marriage to a foreigner, takes the same nationality as the husband in all the countries of the world, and the effect is the same in the country of her nativity as elsewhere, if her former sovereign consents. *Headman* v. *Rose*, 63 Georgia, 458; *Halsey* v. *Beer*, 52 Hun, 366; *Kane* v. *McCarthy*, 63 N. Car. 299; Mrs. Gordon's Case (Instructions to Russia); Mr. Wilson to Mr. Kent, Instructions 1912; 3 Moore, Dig. Int. Law, 457, 461; *People* v. *Newell*, 21 Hun, 79; *Pequinot* v. *Detroit*, 16 Fed. Rep. 211; *United States* v. *Williams*, 173 Fed. Rep. 626; *Ware* v. *Wisner*, 50 Fed. Rep. 310.

The Act of 1907, is in clear and specific terms, and mandatory in its expression, and intended the transfer of allegiance to be immediate upon marriage, and did not contemplate leaving open any question as to the nature of residence abroad. The act has been so interpreted by the State Department at Washington, and also by the Federal courts. House Doc. No. 326, 59th Congress; *In re Rionda*, 164 Fed. Rep. 368; *Kelly* v. *Owen*, 7 Wall. 496; Mr. Wilson to Mr. Kent (1912); *Pequinot* v. *Detroit*, 16 Fed. Rep. 211; *United States* v. *Cohen*, 179 Fed. Rep. 835.

MR. JUSTICE McKENNA delivered the opinion of the court.

Mandamus prosecuted by plaintiff in error as petitioner against defendants in error, respondents, as and composing

the Board of Election Commissioners of the city and county of San Francisco, to compel her registration as a qualified voter of the city and county, in the appropriate precinct therein.

An alternative writ was issued but a permanent writ was denied upon demurrer to the petition.

The facts are not in dispute. and are stated by Mr. Justice Shaw, who delivered the opinion of the court, as follows:

"The plaintiff was born and ever since has resided in the State of California. On August 14, 1909, being then a resident and citizen of this State and of the United States, she was lawfully married to Gordon Mackenzie, a native and subject of the kingdom of Great Britain. He had resided in California prior to that time, still resides here and it is his intention to make this State his permanent residence. He has not become naturalized as a citizen of the United States and it does not appear that he intends to do so. Ever since their marriage the plaintiff and her husband have lived together as husband and wife. On January 22, 1913, she applied to the defendants to be registered as a voter. She was then over the age of twenty-one years and had resided in San Francisco for more than ninety days. Registration was refused to her on the ground that by reason of her marriage to Gordon Mackenzie, a subject of Great Britain, she thereupon took the nationality of her husband and ceased to be a citizen of the United States."

Plaintiff in error claims a right as a voter of the State under its constitution and the Constitution of the United States.

The constitution of the State gives the privilege of suffrage to "every native citizen of the United States," and it is contended that under the Constitution of the United States every person born in the United States is a citizen thereof. The latter must be conceded, and if

plaintiff has not lost her citizenship by her marriage she has the qualification of a voter prescribed by the constitution of the State of California. The question then is, Did she cease to be a citizen by her marriage?

On March 2, 1907, c. 2534, 34 Stat. 1228, that is, prior to the marriage of plaintiff in error, Congress enacted a statute the third section of which provides "That any American woman who marries a foreigner shall take the nationality of her husband. At the termination of the marital relation she may resume her American citizenship, if abroad, by registration as an American citizen within one year with a consul of the United States, or by returning to reside in the United States, or, if residing in the United States at the termination of the marital relation, by continuing to reside therein."

Plaintiff contends that "such legislation, if intended to apply to her, is beyond the authority of Congress."

Questions of construction and power are, therefore, presented. Upon the construction of the act it is urged that it was not the intention to deprive an American-born woman, remaining within the jurisdiction of the United States, of her citizenship by reason of her marriage to a resident foreigner. The contention is attempted to be based upon the history of the act and upon the report of the committee upon which, it is said, the legislation was enacted. Both history and report show, it is asserted, "that the intention of Congress was solely to legislate concerning the status of citizens *abroad* and the questions arising by reason thereof."

Does the act invite or permit such assistance? Its declaration is general, "that any American woman who marries a foreigner shall take the nationality of her husband." There is no limitation of place; there is no limitation of effect, the marital relation having been constituted and continuing. For its termination there is provision, and explicit provision. At its termination she may resume

her American citizenship if in the United States by simply
remaining therein; if abroad, by returning to the United
States, or, within one year, registering as an American
citizen. The act is therefore explicit and circumstantial.
It would transcend judicial power to insert limitations or
conditions upon disputable considerations of reasons
which impelled the law, or of conditions to which it might
be conjectured it was addressed and intended to accom-
modate.

Whatever was said in the debates on the bill or in the
reports concerning it, preceding its enactment or during
its enactment, must give way to its language, or, rather,
all the reasons that induced its enactment and all of its
purposes must be supposed to be satisfied and expressed
by its words, and it makes no difference that in discussion
some may have been given more prominence than others,
seemed more urgent and insistent than others, presented
the mischief intended to be remedied more conspicuously
than others.

The application of the law thus being determined, we
pass to a consideration of its validity.

An earnest argument is presented to demonstrate its
invalidity. Its basis is that the citizenship of plaintiff
was an incident to her birth in the United States, and,
under the Constitution and laws of the United States, it
became a right, privilege and immunity which could not
be taken away from her except as a punishment for crime
or by her voluntary expatriation.

The argument to support the contention and the argu-
ment to oppose it take a wide range through the principles
of the common law and international law and their de-
velopment and change. Both plaintiff and defendants
agree that under the common law originally allegiance was
immutable. They do not agree as to when the rigidity of
the principle was relaxed. Plaintiff in error contests the
proposition which she attributes to defendants in error

"that the doctrine of perpetual allegiance maintained by England was accepted by the United States," but contends "that the prevalent doctrine of this country always has been that a citizen had a right to expatriate himself," and cites cases to show that expatriation is a natural and inherent right.

Whether this was originally the law of this country or became such by inevitable evolution it is not important to inquire. The first view has certainly high authority for its support. In *Shanks* v. *Dupont*, 3 Pet. 242, 246, Mr. Justice Story, delivering the judgment of the court, said: "The general doctrine is, that no persons can by any act of their own, without the consent of the government, put off their allegiance, and become aliens." And Kent, in his commentaries, after a historical review of the principle and discussion in the Federal courts, declares that "the better opinion would seem to be, that a citizen cannot renounce his allegiance to the United States without the permission of government declared by law; and that, as there is no existing legislative regulation on the case, the rule of the English common law remains unaltered." 2 Kent, 14th ed. 49. The deduction would seem to have been repelled by the naturalization laws, and it was certainly opposed to executive opinion; and, we may say, popular sentiment, so determined that it sought its vindication by war. Further discussion would lead us far afield, and, besides, would only have historical interest.[1] The condition which Kent suggested has occurred; there is a legislative declaration. In 1868, c. 249, 15 Stat. 223, Congress explicitly declared the right of expatriation to have been and to be the law. And the declaration was in effect said to be the dictate of necessity.

[1] The course of opinion and decision is set forth in Van Dyne's "Citizenship of the United States" and in his "Naturalization in the United States"; Moore's Digest of International Law. See also Cockburn on Nationality.

The act recites that emigrants have been received and invested with citizenship in recognition of the principle of the right of expatriation and that there should be a prompt and final disavowal of the claim "that such American citizens, with their descendants, are subjects of foreign states." Rev. Stat., § 1999.

But plaintiff says, "Expatriation is evidenced only by emigration, coupled with other acts indicating an intention to transfer one's allegiance." And all the acts must be voluntary, "the result of a fixed determination to change the domicile and permanently reside elsewhere, as well as to throw off the former allegiance, and become a citizen or subject of a foreign power."

The right and the condition of its exercise being thus defined, it is said that the authority of Congress is limited to giving its consent. This is variously declared and emphasized. "'No act of the legislature,'" plaintiff says, "'can denationalize a citizen without his concurrence,'" citing *Burkett* v. *McCarty*, 73 Kentucky (10 Bush), 758. "'And the sovereign cannot discharge a subject from his allegiance against his consent except by disfranchisement as a punishment for crime,'" citing *Ainslie* v. *Martin*, 9 Massachusetts, 454. "'The Constitution does not authorize Congress to enlarge or abridge the rights of citizens,'" citing *Osborn* v. *Bank of United States*, 9 Wheat. 737. "'The power of naturalization vested in Congress by the Constitution is a power to confer citizenship, not a power to take it away. . . . The Fourteenth Amendment, while it leaves the power where it was before, in Congress, to regulate naturalization, has conferred no authority upon Congress to restrict the effect of birth declared by the Constitution to constitute a complete right of citizenship,'" citing *United States* v. *Wong Kim Ark*, 169 U. S. at p. 703.

It will thus be seen that plaintiff's contention is in exact antagonism to the statute. Only voluntary expatriation,

as she defines it, can divest a woman of her citizenship, she declares; the statute provides that by marriage with a foreigner she takes his nationality.

It would make this opinion very voluminous to consider in detail the argument and the cases urged in support of or in attack upon the opposing conditions. Their foundation principles, we may assume, are known. The identity of husband and wife is an ancient principle of our jurisprudence. It was neither accidental nor arbitrary and worked in many instances for her protection. There has been, it is true, much relaxation of it but in its retention as in its origin it is determined by their intimate relation and unity of interests, and this relation and unity may make it of public concern in many instances to merge their identity, and give dominance to the husband. It has purpose, if not necessity, in purely domestic policy; it has greater purpose and, it may be, necessity, in international policy. And this was the dictate of the act in controversy. Having this purpose, has it not the sanction of power?

Plaintiff contends, as we have seen, that it has not, and bases her contention upon the absence of an express gift of power. But there may be powers implied, necessary or incidental to the expressed powers. As a government, the United States is invested with all the attributes of sovereignty. As it has the character of nationality it has the powers of nationality, especially those which concern its relations and intercourse with other countries. We should hesitate long before limiting or embarrassing such powers. But monition is not necessary in the present case. There need be no dissent from the cases cited by plaintiff; there need be no assertion of very extensive power over the right of citizenship or of the imperative imposition of conditions upon it. It may be conceded that a change of citizenship cannot be arbitrarily imposed, that is, imposed without the concurrence of the citizen. The law in controversy does not have that feature. It deals with

a condition voluntarily entered into, with notice of the consequences. We concur with counsel that citizenship is of tangible worth, and we sympathize with plaintiff in her desire to retain it and in her earnest assertion of it. But there is involved more than personal considerations. As we have seen, the legislation was urged by conditions of national moment. And this is an answer to the apprehension of counsel that our construction of the legislation will make every act, though lawful, as marriage, of course, is, a renunciation of citizenship. The marriage of an American woman with a foreigner has consequences of like kind, may involve national complications of like kind, as her physical expatriation may involve. Therefore, as long as the relation lasts it is made tantamount to expatriation. This is no arbitrary exercise of government. It is one which, regarding the international aspects, judicial opinion has taken for granted would not only be valid but demanded. It is the conception of the legislation under review that such an act may bring the Government into embarrassments and, it may be, into controversies. It is as voluntary and distinctive as expatriation and its consequence must be considered as elected.

*Judgment affirmed.*

Mr. Justice McReynolds is of opinion that this court is without jurisdiction, and that, therefore, this writ of error should be dismissed.