## Ex parte HING.

District Court, W. D. Washington, N. D.
January 19, 1927.

No. 11160.

1. **Aliens ☞42—Where members of Board of Special Inquiry were properly appointed and took oath, it was legal for board to determine applicant's right to admission to United States (Immigration Act [8 USCA §§ 201–226]; 8 USCA § 153).**

Members of Board of Special Inquiry having been properly appointed, and having duly qualified by taking oath prescribed by Immigration Act (8 USCA §§ 201–226), pursuant to section 17 of Act Cong. Feb. 5, 1917 (8 USCA § 153), there was legal Board of Special Inquiry, which could determine rights of applicant for admission to United States.

2. **Citizens ☞3—Congress is without authority to restrict effect of birth in United States as making one citizen (Const. Amend. 14).**

Under Const. Amend. 14, providing that all persons born in United States are citizens thereof, Congress is without authority to restrict effect of birth as making one a citizen.

3. **Citizens ☞7—Congress may provide that marriage to alien shall expatriate (Const. Amend. 14; 8 USCA § 9).**

Under Const. Amend. 14, Congress may provide that marriage to an alien shall effect expatriation, as was provided by Act Sept. 22, 1922, § 3 (8 USCA § 9).

4. **Aliens ☞61—Applicant, whose father was Chinaman and whose mother belonged to English race, was of race ineligible to United States citizenship (Immigration Act 1924, § 13 [c], being 8 USCA § 213).**

Under Immigration Act 1924, § 13(c), being 8 USCA § 213, applicant, who was born in Vermont, and who, it was claimed, had married an alien since her departure from United States, and whose father was a Chinaman, and whose mother was white and belonged to English race, was of race ineligible to United States citizenship.

5. **Evidence ☞21, 37—Court cannot take judicial notice of foreign laws or customs, and must apply local laws and customs to controverted fact, in absence of proof.**

Court cannot take judicial notice of foreign laws or customs, and must apply local laws and customs to any controverted fact, in absence of proof.

6. **Citizens ☞10—Native-born citizen should not be deprived of privilege of citizenship without substantial testimony to sustain fact of marriage to alien (8 USCA § 9).**

Native-born citizen should not be deprived of privilege of United States citizenship, under Act Sept. 22, 1922, § 3 (8 USCA § 9), without substantial testimony to sustain fact of her marriage to an alien.

**7. Citizens ⚮10—That some ceremony was performed in foreign country, and that applicant for admission to United States believed she was married, did not establish marriage of applicant to alien.**

Fact that some ceremony was performed in foreign country, and belief of applicant for admission to United States and her alleged husband of marriage status did not of itself establish marriage of applicant, who had been United States citizen, to alien.

**8. Citizens ⚮10—That applicant for admission to United States sought divorce and obtained interlocutory decree did not establish marriage of applicant to alien.**

That applicant for admission to United States, who had been United States citizen by reason of birth, had sought divorce and obtained interlocutory decree, did not establish marriage to alien, if in fact such relation had not been consummated.

### On Further Hearing.

**9. Citizens ⚮10—Evidence did not show marriage of applicant for admission to United States, formerly United States citizen, to alien in China (8 USCA § 9).**

In hearing before Board of Special Inquiry for admission to United States of applicant, who had been citizen of United States by reason of birth, evidence showing that Chinese customs were not observed, and that ceremony was performed by a Mohammedan priest, evidence did not show marriage of applicant to an alien, who was person of half Chinese and half East Indian blood, so as to effect expatriation, under Act Sept. 22, 1922, § 3 (8 USCA § 9).

Habeas Corpus. Application of Sara Lydia Hing, also known as Sara Lydia Rumjahn, for a writ to secure release from custody. Writ issued.

The petitioner, born at East Barnard, Vt., United States, married to an alien since her departure, seeks admission to the United States. Her father is a Chinaman and her mother, born in England, is white and belongs to the English race. Petitioner was educated in the schools of the United States, having three years of high school education, and speaks very little Chinese—"just what I picked up when I went over there." She was preinvestigated and given a return certificate (form 430), and departed for China May 2, 1923. She went through a marriage ceremony, and believed she was married to Rumjahn, a medical student in Hong Kong, a person of half Chinese and half East Indian blood. She returned to the United States May 5, 1925, and presented her return certificate, and disclosed the fact of her marriage. She was denied admission under section 13(c) of the Immigration Act of 1924 (8 USCA § 213) being married to an alien ineligible to citizenship. On appeal the Secretary of Labor sustained exclusion, but authorized her parole for six months, which was afterwards extended for two additional periods of six months each. Thereafter deportation was directed November 23, 1926. She surrendered herself December 3, 1926, and applied for a writ of habeas corpus.

She alleges that she was denied a fair trial, in that she did not have counsel; that she was told by the board it was unnecessary, and that she was therefore not advised as to her legal status; that the true facts with relation to the marriage ceremony were not established; that there is no testimony sustaining a valid marriage under the laws of China; and that the ceremony performed is void, and does not constitute the petitioner the wife of Arthur J. Rumjahn. It is also claimed that the Board of Special Inquiry was not legally organized, and the members therefore incompetent to constitute a valid board, and, so constituted, could not determine the rights of the applicant.

The only evidence in the record as to the marriage is the testimony of the petitioner:

"Q. Have you been married? A. Yes.

"Q. How many times have you been married? A. Once.

"Q. Where were you married? A. In Canton, China.

"Q. Where was your husband born? A. Hong Kong.

"Q. Of what race of people is he? A. Indian. I mean Mohammedan, but he has never been out of Hong Kong. I think his ancestors were from India.

"Q. Is he a full-blooded Indian? A. No; he is half Chinese.

Q. Were you married in accordance with the Chinese custom? A. No; Mohammedan."

There is also attached to the return, and a part of the record, a letter from the husband, of subsequent date, but, being introduced, shows that the marriage was a secret marriage, in that the participants went to Canton, and were married without the knowledge of their friends, in a Mohammedan mosque. "Only a scrap of paper was given as proof of marriage. * * * It was written in Sanskrit. * * * The priest gave us that when we asked for proof. * * *" The reason for the secret marriage is because the parents of the husband did not want him to get married until he had graduated from the medical college, in which he was a student.

* * * * * * * * * * *

Fred H. Lysons, of Seattle, Wash., for petitioner.

Thos. P. Revelle, U. S. Dist. Atty., and C. T. McKinney, Asst. U. S. Dist. Atty., both of Seattle, Wash.

NETERER, District Judge (after stating the facts as above). [1] The Board of Special Inquiry was composed of James P. Sanderson, chairman, G. H. Mangels, and Alice H. Shaver. By supplemental record it is shown that Sanderson was designated by the Commissioner General of Immigration as a member of the Board of Special Inquiry on May 1, 1917, and duly qualified by taking the oath prescribed by the Immigration Act, pursuant to section 17 of the Act of Congress approved February 5, 1917 (8 USCA § 153); that Mangels was designated by Assistant Secretary of Labor as a member of the Board of Special Inquiry, pursuant to the Act of Congress, supra, on May 2, 1917, and on the same day took the oath prescribed by such section; that Alice H. Shaver was designated as a member of the Board of Special Inquiry under the above provisions, November 14, 1922, and on the 25th of November, 1922, took the oath as a member of such board, as required by the laws of the United States. There was therefore a legal Board of Special Inquiry, aside from the presumption of such organization.

[2, 3] Under the Fourteenth Amendment, all persons born in the United States are citizens thereof. The Congress is without power to restrict the effect of birth. United States v. Wong Kim Ark, 169 U. S. 649, 18 S. Ct. 456, 42 L. Ed. 890. A person, however, may expatriate himself. 15 Stat. 223, Act July 27, 1868 (8 USCA §§ 13-15). The Congress may provide that marriage to an alien shall effect expatriation. McKenzie v. Hare, 239 U. S. 299, 36 S. Ct. 106, 60 L. Ed. 297, Ann. Cas. 1916E, 645; Act Cong. Sept. 22, 1922, § 3 (8 USCA § 9).

[4] Section 13(c) of the Immigration Act of 1924 provides that no alien ineligible to citizenship shall be admitted to the United States, and those eligible to citizenship are "white persons, aliens of African nativity, and persons of African descent." The applicant is of a race ineligible to United States citizenship. Ex parte (Ng) Fung Sing (D. C.) 6 F.(2d) 670; United States v. Bhagat Singh Thind, 261 U. S. 204, 43 S. Ct. 338, 67 L. Ed. 616; Ozawa v. United States, 260 U. S. 178, 43 S. Ct. 65, 67 L. Ed. 199. See, also, United States v. Pandit (C. C. A.) 15 F.(2d) 285.

[5, 6] The marriage ceremony of China, as well as the Mohammedan ceremony, may be very primitive. This court may not take judicial notice of foreign laws or customs; the court must apply local laws and customs to any controverted fact, in the absence of proof. United States citizenship is a very substantial right. It is the highest political privilege which an individual may enjoy. United States citizenship means more than citizenship in any other country, and a native-born citizen should not be deprived of this high privilege without substantial testimony to sustain the fact.

[7, 8] If the applicant is legally married to an alien ineligible to citizenship, she has expatriated herself, and may not be admitted. Ex parte (Ng) Fung Sing, supra. The fact that some ceremony was performed does not show legal marriage, and the belief of the applicant and her alleged husband of the marriage status would not of itself establish the relation. Ex parte Morel (D. C.) 292 F. 423. Nor would the fact that the applicant sought a divorce and obtained an interlocutory decree establish marriage, if, in fact, such relation had not been consummated. A marriage in China, consummated by a Mohammedan ceremony, not in harmony with the Chinese law or custom of marriage, would have no more operative effect than a marriage, consummated in California, pursuant to a ceremony of French custom in the republic of France. See Ex parte Morel, supra. There is no competent evidence before the court to show that the applicant has been legally married, or that there has been consummated a relation which binds the applicant to her alleged husband, upon which she could predicate a claim for support, or inheritable right of a surviving spouse in the event of death.

The writ will therefore be granted, returnable on the 21st day of March, 1927, with the provision that, pending return, the Immigration Department grant a rehearing for the production of further testimony with relation to the marriage, and that such testimony, together with the findings of the Board of Special Inquiry, be transmitted to the Secretary of Labor as on appeal, and the final additional record be incorporated in the return of the Commissioner of Immigration to this writ. On failure to comply with the provision herein, on or before the return day herein, or such further time to which the return may be extended by the court, the writ will be granted and the petitioner discharged. The petitioner will be released on filing a bond, or recognizance, with the usual conditions, in the sum of $500, pending this hearing.

## On Further Hearing.

[9] Further hearing was had and return made showing that the exclusion order was affirmed by the board and by the Secretary of Labor. The supplemental record returned shows that the marriage of the petitioner to Rumjahn was not arranged by the parents (see Hubinch, 24 Judicial Review, 378–382), but by the parties. There was no investigation of the respective family histories and records in duplicate for three generations made, known as "Sahm Doi Teep," nor was such record exchanged between the parties or the families, nor ancestral and family worship and pledge observed; no matrimonial letters or cards were exchanged (Sy Joe Lieng et al. v. Petronila Encarnacion et al., 16 Phil. Islands, 137; see, also, 6 Enc. Brittannica [11th Ed.] 172, 173), nor any requirements of Chinese custom observed. In effect, the bride and groom eloped, and some ceremony was performed by a Mahommedan priest.

There is no competent evidence in the record that the bride had accepted the Mohammedan faith, but that is immaterial. There is, no doubt, a Christian marriage ceremony recognized in China, as well as the Chinese ceremony; there is no common-law marriage recognized by the Chinese laws or customs.

Writ will issue.