**Petition of ZOGBAUM.**

District Court, D. South Dakota. May 13, 1929.

J. P. Creeley, District Director of Naturalization, amicus curiæ.

ELLIOTT, District Judge. The record is without issue upon questions of fact.

The petitioner arrived at the port of New York, N. Y., on the steamship Bergensfjord, from Norway, on March 31, 1925. At the time of her arrival she was in possession of a Norwegian passport issued to her as a subject of Norway. She obtained admission to the United States for a specified period, which period was later extended upon her application. It further appeared, without dispute, that she was born December 5, 1871, at Rushford, Fillmore county, Minn., and as a child was taken to South Dakota, where

she was reared and educated; that on December 30, 1896, she was married, in Norway, to Wilhelm Zogbaum, and resided there with him until he died in 1921, and in the spring of 1925 returned to the United States, where she has ever since been; that on May 14, 1928, she filed her petition in this court with a certificate of her arrival made a part thereof, under the Act of September 22, 1922 (8 USCA §§ 9, 10, 367–370).

This petition had for its purpose the determination of her status, and it is conceded that this petition is not in compliance with the statutes, in that the filing of a valid certificate of arrival showing entry for permanent residence is a mandatory prerequisite to a valid petition for naturalization. The filing of such petition, though not valid, as a petition for naturalization, gives this court jurisdiction to determine the status of the petitioner, and I am of the opinion that the practice of filing a petition for naturalization, where there is doubt as to the applicant's status, is a proper method of testing the status of the petitioner.

It appeared upon the hearing that the petitioner was married prior to the Act of March 2, 1907 (34 Stat. 1228); that she never was naturalized in a foreign country to which she went with her husband, and never took an oath of allegiance to any foreign state. The sole question presented is: Was the petitioner expatriated by her marriage prior to March 2, 1907, to an alien, and her residence in a foreign country until his death?

The status of this petitioner under the facts as they appear in this case is not a matter of first impression with me. Practically the same situation has been considered in more than one case in this jurisdiction. Having in view the provisions of the Act of March 2, 1907, the Act of September 22, 1922, and the fact that there was no legislation prior to that time, it has been, and is, my view that this petitioner did not lose her citizenship upon her marriage, long prior to March 2, 1907. It is suggested that petitioner's admission by immigration officials as an alien nonimmigrant for a temporary period is inconsistent with her status as an American citizen, she at the time of her admission having in her possession a passport as an alien, and it being conceded that she presented no proof of her birth in the United States, or her marriage to an alien, and made no showing and presented no claim of her possible expatriation under the provisions of the Act of March 2, 1907.

Considering the lack of knowledge by the petitioner of the elements that naturally or necessarily enter into the determination of her status, and that in making this petition for admission she simply followed the form and requirements as suggested by officials, I am not disposed to consider the record as there made as an admission that should be seriously considered against her in determining her status.

I recognize that there has been a marked difference of opinion relative to the effect upon the citizenship of a woman marrying an alien, and, as stated in L. R. A. note to Comitis v. Parkerson, (C. C.) 56 F. 556, 22 L. R. A. 148:

"The effect of marriage on wife's status as an alien is a question which has not been definitely solved, and the contrariety of opinion upon it shows it to be difficult of solution."

The fact remains, however, that, prior to the enactment of statutes upon the subject of expatriation, and when the existence of the right of expatriation was not recognized, the decisions were uniform to the effect that a citizen could not renounce his or her allegiance to the United States without the permission of the government, that permission to be declared by law, and, there being no legislative regulations, the rule of the English common law prevailed.

And in Beck v. McGillis, 9 Barb. (N. Y.) 35, it was held that neither the marriage of a native born woman to an alien nor her residence in a foreign country constitutes her an alien.

In Shanks v. Dupont, 28 U. S. (3 Pet.) 242, 7 L. Ed. 666, it is held that the marriage of a native-born woman with an alien produces no dissolution of the native allegiance of the wife. It may change her civil rights, but it does not affect her political rights or privileges. The general doctrine is that no person can by act of his own, without the consent of the government, put off his allegiance and become an alien.

I have been, and am, impressed with the soundness of this declaration of law by Justice Story, notwithstanding the very able dissenting opinions in the case. That the subject of the status of a woman born in the United States and marrying an alien was intentionally left to be interpreted in the light of the common-law rule is evidenced by the Act of February 10, 1855 (10 Stat. 604), providing the status of women married to American citizens, but with no application to an American-born woman marrying a foreigner, and, while there followed a wide diversity of opinion relative to the status of

an American-born woman married to an alien, one line of decisions holding that the converse of the Act of February 10, 1855, was the rule, and that the citizenship of the wife followed that of the husband; a second line of decisions held that there was no expatriation unless the woman removed and took up a permanent residence in a foreign country; and the third line of decisions, that, in the absence of an express statute, there could be no expatriation.

In Comitis v. Parkerson (C. C.) 56 F. 556, 22 L. R. A. 148, the court held, in substance, that, when Congress was given the right to make a uniform rule of naturalization, this, by the terms of the Constitution, included the right to make a rule of expatriation, and, having failed to make a legislative provision with reference to an American-born woman marrying a foreigner, the court could not assume that such rule existed in the absence of an expatriation statute.

It is impossible to reconcile the decisions involving the material issue here presented, and the difficulty of the situation is emphasized by the fact that the views of the Department of Labor, which administers the laws relative to immigration and naturalization, and the Department of State, which administers the laws relative to passports and protection of citizens of the United States in foreign countries, are not uniform. The Supreme Court of the United States in Re McKenzie v. Hare, 239 U. S. 299, 36 S. Ct. 106, 60 L. Ed. 297, Ann. Cas. 1916E, 645, sustained the right of Congress to enact the provisions of the Act of March 2, 1907, and further determining that marriages prior to 1907 were not involved in the particular case at issue, but the references in that opinion to such marriages would seem to indicate that the Supreme Court then assumed that the status of such women would require judicial determination.

While the views of the Department of Labor, which administers the laws relative to naturalization, are not binding upon the Court, they carry great weight, and are entitled to earnest consideration.

I therefore find that the petitioner was born, reared, and educated in the United States, married an alien December 30, 1896, and resided in Norway during the marital relations and until his death; that she arrived on the steamship Berjensfjord from Norway and landed in the United States March 31, 1925, and obtained admission to the United States for a temporary period, which has been extended from time to time upon her application; that she was never naturalized in a foreign state, and never took an oath of allegiance to a foreign state, and has resumed, and desires to retain a permanent, residence in the United States.

I am of the opinion that she was not by her marriage expatriated and an alien, by the terms of section 2, Act of March 2nd, 1907; that her status remained the same after the enactment of this law; that, at the time of her marriage, she did not take the citizenship of her husband, and, at the termination of the marital relations by his death, she was, and is, at liberty to resume her American citizenship, and she has exercised that privilege by returning to reside in the United States.

She was born an American citizen, reared and educated in this country, was not expatriated by her marriage under the laws as they existed at the time of her marriage. Her status was not affected by the Act of March 2, 1907. She was never expatriated by being naturalized in a foreign state, nor has she ever taken an oath of allegiance to a foreign state, and I am of the opinion that her marriage to Zogbaum, a foreigner, on December 30, 1896, did not deprive her of her American citizenship, which attaches to her and now abides with her by reason of her birth in the United States.