### In re WOHLGEMUTH.

District Court, W. D. Michigan, S. D. November 13, 1929.

RAYMOND, District Judge. The sole question presented by this petition for naturalization is whether Emma Wohlgemuth is already a citizen of the United States. If she is, the court has no jurisdiction; if not, under the proofs taken she is entitled to be admitted to citizenship.

Petitioner was born in the United States and on August 26, 1901, she was married to William Wohlgemuth, a German subject. Since marriage, she has continued her residence in this country. The question presented is whether, prior to the Act of Congress of March 2, 1907, 34 Stat. 1228 (which fixed the status as an alien of an American woman who married a foreign subject), the effect of such marriage was the same as provided by that statute, or did such marriage effect no change in her former status as an American citizen? In other words, did the statute referred to merely restate or declare the common-law rule, or did it change the rule theretofore existing?

Research indicates that the question is one upon which the authorities are in confusion. Courts of eminent authority have held that in such cases there was no change of citizenship. See Shanks v. Dupont, 3 Pet.

242, 7 L. Ed. 666; Comitis v. Parkerson (C. C.) 56 F. 556, 22 L. R. A. 148; Wallenburg v. Missouri Pac. Ry. Co. (C. C.) 159 F. 217; In re Fitzroy (D. C.) 4 F.(2d) 541; 10 Op. Attys. Gen. 321; 15 Attys. Gen. 599. Other equally respectable authorities have held that a woman citizen of the United States lost her citizenship by intermarrying with an alien and became subject to the sovereign of her husband. See Pequignot v. City of Detroit (C. C.) 16 F. 211; In re Page (D. C.) 12 F.(2d) 135; Petition of Drysdale (D. C.) 20 F.(2d) 957; In re Krausmann (D. C.) 28 F.(2d) 1004; 12 Op. Attys. Gen. 7; 13 Op. Attys. Gen. 128.

While the question is not free from doubt, consideration of these conflicting authorities and the reasons upon which they are based convince the court that the principles announced in the Pequignot Case and followed in the later decisions are sustained by better logic.

The result reached in Shanks v. Dupont, supra, and the cases following it is based largely upon the argument that no person could voluntarily and without the consent of the government expatriate himself. This doctrine has not been accepted. In the case of Mackenzie v. Hare, 239 U. S. 299, 309, 36 S. Ct. 106, 107, 60 L. Ed. 297, Ann. Cas. 1916E, 645, the Supreme Court said that "In 1868 [chapter 249, 15 Stat. 223] Congress explicitly declared the right of expatriation to have been and to be the law." See 8 USCA § 15. Referring to authorities which had declared the contrary rule, the court further said:

"In Shanks v. Dupont, 3 Pet. 242, 246, 7 L. Ed. 666, 668, Mr. Justice Story, delivering the judgment of the court, said: 'The general doctrine is, that no persons can by any act of their own, without the consent of the government, put off their allegiance, and become aliens.' And Kent, in his commentaries, after a historical review of the principle and discussion in the Federal courts, declares that 'the better opinion would seem to be, that a citizen cannot renounce his allegiance to the United States without the permission of government declared by law; and that, as there is no existing legislative regulation on the case, the rule of the English common law remains unaltered.' 2 Kent, 14th Ed., 49. The deduction would seem to have been repelled by the naturalization laws, and it was certainly opposed to executive opinion; and, we may say, popular sentiment, so determined that it sought its vindication by war."

The repudiation by Congress of the doctrine upon which the Shanks v. Dupont case largely relies, and the apparent approval of the contrary principle by the Supreme Court, greatly weakens its value as a precedent.

Prior to the enactment of the Act of September 22, 1922 (8 USCA § 9), it seems to have been the policy of the United States government to preserve the common-law unity of husband and wife in matters of citizenship, and, if this be true, the Act of March 2, 1907, was the statutory enactment of what had previously been the common-law rule. This view is strengthened by the following statement from the case of Mackenzie v. Hare, supra, 239 U. S. 311, 36 S. Ct. 106, 108, 60 L. Ed. 297, Ann. Cas. 1916E, 645.

"The identity of husband and wife is an ancient principle of our jurisprudence. It was neither accidental nor arbitrary, and worked in many instances for her protection. There has been, it is true, much relaxation of it, but in its retention as in its origin it is determined by their intimate relation and unity of interests, and this relation and unity may make it of public concern in many instances to merge their identity, and give dominance to the husband. It has purpose, if not necessity, in purely domestic policy; it has greater purpose, and, it may be, necessity, in international policy."

It is therefore ordered that petitioner be admitted as a citizen of the United States.