**REVEDIN v. ACHESON, U. S. Sec. of State, et al.**

**No. 131, Docket 22195.**

United States Court of Appeals Second Circuit.

Argued Jan. 18, 1952.

Decided Feb. 8, 1952.

Cornelius W. Wickersham, New York City (Cadwalader, Wickersham & Taft, Jacquelin A. Swords, and Thomas A. Shaw, all of New York City, on the brief), for plaintiff-appellant.

Henry L. Glenn, Asst. U. S. Atty., New York City (Myles J. Lane, U. S. Atty., New York City, on the brief), for defendant-appellee Acheson.

Before AUGUSTUS N. HAND and CLARK, Circuit Judges, and BRENNAN, District Judge.

CLARK, Circuit Judge.

Plaintiff Margaret Trimble Revedin was born in New York City of native-born parents. In 1935 she became engaged to one Count Giovanni Revedin, an Italian and a career member of the Italian Diplomatic Corps. At the time, Italian law prohibited the marriage of Diplomatic Corps personnel to anyone but Italian citizens; and plaintiff and her fiancé had, according to her testimony, some "four years of discussions" about this impediment. In 1938, however, Revedin informed her that he had unearthed a method whereby she might satisfy the requirement of her Italian citizenship and make their marriage possible "which would in no way endanger my citizenship." On this assurance alone she agreed to go through with it. First she signed a document forwarded to her by her future father-in-law; she alleges her contemporary ignorance of its contents, since it was in Italian, which she did not read or understand; but it was an application for Italian citizenship pursuant to which

a Royal Decree was issued granting such citizenship on condition of an oath of allegiance. Next she went to the Italian Consulate in New York for what she understood to be only "a very irregular procedure" in which she "was supposed to be taking an oath." She was told to raise her right hand and "something" in Italian —an oath of allegiance as it developed— was said to her. She was then given a piece of paper, also in Italian, and told to sign it, which she did. This recited among other things her presence and request that her oath be received. It is not disputed that plaintiff had no specific intent to renounce her American citizenship or that she did not at that time understand the Italian language, although she had studied it in school.

Shortly thereafter plaintiff and Revedin were married; and she then accompanied him abroad on his diplomatic assignments until 1943, at which time they were interned in Slovakia as Bagdolio sympathizers. Following their liberation she returned to this country for hospitalization, after which she applied to the Department of State for a United States passport prior to rejoining her husband, who had taken up his diplomatic duties again, this time in Japan. The request was denied, and plaintiff brought the present action in the District Court for the Southern District of New York for a declaration of her citizenship pursuant to 8 U.S.C.A. § 903. The court found *inter alia* that plaintiff had taken an oath of allegiance to the King of Italy and concluded that she had thereby expatriated herself under the governing law.[1] While the court did not distinguish between them, defendant relies both on Section 2 of the Citizenship Act of 1907 and Section 401 of the Nationality Act of 1940, 8 U.S.C.A. § 801, both of which provide for such expatriation upon foreign naturalization, or upon oath or affirmation of foreign allegiance, while the latter adds also as a ground "or other formal declaration of allegiance to a foreign state."[2]

We hold with the District Court that plaintiff's acts at the Italian Consulate on February 14, 1939, followed by her residence abroad, resulted in the expatriation defined by statute; and, but for certain contentions, vigorously advanced for her, we would rely solely on Savorgnan v. United States, 338 U.S. 491, 70 S.Ct. 292, 94 L.Ed. 287, a case which is practically indistinguishable from this. Plaintiff seeks, however, to exploit her inability to read or understand Italian. She contends that her ignorance of the literal meaning of the words read to her and attested to by her made her acts ineffective for purposes of expatriation, since (as she asserts) they would thus have been of no weight for purposes of acquiring either Italian or American citizenship. But the requirement of a legally valid oath for purposes of gaining citizenship is not to be imported into the statutory provisions dealing with its loss. The statutory provision itself is not so qualified; and we do not read either In re Gogal, D.C.W.D.Pa., 75 F.Supp. 268, or Gillars v. United States, 87 U.S.App.D.C. 16, 182 F.2d 962, as interpolating any such mandate. Rather Gogal's oath was ineffective, because it was not the product of a free and intelligent election, while in the Gillars case the absence of solemnity and formality was fatal to the contention that citizenship had been lost. Since plaintiff's acts were free of either compulsion or caprice, she must be held bound by them.

[1.] A similar result was later reached in Boissonnas v. Acheson, D.C.S.D.N.Y., 101 F.Supp. 138.

[2.] 34 Stat. 1228, 8 U.S.C. (1934 Ed.) § 17: "That any American citizen shall be deemed to have expatriated himself when he has been naturalized in any foreign state in conformity with its laws, or when he has taken an oath of allegiance to any foreign state."

8 U.S.C.A. § 801: "A person who is a national of the United States, whether by birth or naturalization, shall lose his nationality by:

"(a) Obtaining naturalization in a foreign state, either upon his own application or through the naturalization of a parent having legal custody of such person: * * * or

"(b) Taking an oath or making an affirmation or other formal declaration of allegiance to a foreign state; * * *."

Nor can there longer be doubt that an intent to renounce American citizenship is not a prerequisite for expatriation. Savorgnan v. United States, supra, is quite explicit as to this, and Moser v. United States, 341 U.S. 41, 71 S.Ct. 553, 95 L.Ed. 729, despite its holding, introduces no qualification. This last case arose under the provisions of the Selective Training and Service Act of 1940, 50 U.S.C.A.Appendix, § 303(a), debarring aliens who requested service deferment from future citizenship. The Supreme Court there held that plaintiff's claim of immunity had not invoked the cited provisions, since the Department of State indirectly through the Swiss Legation had informed him that he was not thereby prejudicing his future claim and since the application for immunity which he signed contained no reference to the statute. Distinguishing the Savorgnan case, the Court said, "Since the Revised Form 301 contained no waiver, what he signed was entirely consistent with what he believed and claimed." 341 U.S. 41, 47, 71 S.Ct. 553, 556. Here there was no such consistency. Plaintiff raised her hand to an oath of allegiance to the King of Italy in circumstances which she as an intelligent and educated adult must have recognized as imposing some responsibility on her for her own acts. She therefore came within the statute, whatever her intent.

Plaintiff asserts, and we agree, that American citizenship is an extraordinarily precious thing. But we would suppose that one realizing this would not enter lightly into foreign language oaths and document signing, no matter how "informal and frivolous," without seriously seeking information and guidance. The provisions of the two relevant sections, however harsh on plaintiff now, are objectively and clearly stated. Like the court below we need not distinguish between them, since we find the provisions even of the earlier act completly operative here. She cannot escape their effect merely because she did not intend to be bound by them or because she kept herself insulated from the significance of free and conscious acts for which she must be held responsible.

Judgment affirmed.