**Clemente Martinez PEREZ, Appellant,**

v.

**Herbert BROWNELL, Jr., Attorney General of the United States, Washington, D. C., Appellee.**

**No. 14497.**

United States Court of Appeals
Ninth Circuit.

July 12, 1956.

Salvatore C. J. Fusco, San Francisco, Cal., for appellant.

Lloyd H. Burke, U. S. Atty., Charles Elmer Collett, Asst. U. S. Atty., San Francisco, Cal., for appellee.

Before DENMAN, Chief Judge, HASTIE, Circuit Judge, and TOLIN, District Judge.

TOLIN, District Judge.

This is an action wherein appellant sought declaratory relief.[1] After trial, the District Court found against him. He has not attacked the evidence but contended in the trial Court, and insists here, that Congress was without power to enact the statute which has been invoked against him.

Briefly stated, the facts found by the District Court are that appellant was

1. Brought pursuant to Title 28 U.S.C. § 2201, and Title 8 U.S.C.A. § 1503.

born in El Paso, Texas, March 17, 1909, and resided in the United States until 1919 or 1920 when his parents took him to Mexico.

In 1928 he was informed that he had been born in Texas.

During World War II he applied for admission and was admitted into the United States as a Mexican alien railroad worker. His application for such entry contained his recitation that he was a native-born citizen of Mexico.

The Court found that he knew at the outbreak of World War II that it was the duty of male citizens of the United States of America to register under the Selective Service Laws of the United States of America. Appellant did not so register at any time. During 1947 he was in Mexico and during that year applied for admission to the United States as a citizen of the United States. The District Court found that appellant was then held for a hearing before a Board of Special Inquiry and

"* * * During the course of said hearing plaintiff admitted that he had remained outside the United States to avoid military service and that he had voted in elections in Mexico * * *".

The District Court further found:

"Plaintiff remained outside the United States from November 1944 to July 1947 for the purpose of avoiding or evading training or service in the United States Armed Forces.

"Plaintiff voted in a political election in Mexico in July, 1946."

On May 15, 1953, he surrendered to Immigration authorities in San Francisco as an alien unlawfully in the United States but claimed that he was a citizen of the United States by birth and thereby entitled to remain. This contention was urged in the present suit where the District Court stated in its Conclusions of Law:

"Plaintiff lost his said nationality of the United States of America under the Nationality Act of 1940, as amended September 27, 1944 (8 U. S.C. § 801(j)),* by remaining outside of the jurisdiction of the United States in time of war for the purpose of evading and avoiding training and service in the land, air and naval forces of the United States.

"Plaintiff lost his said nationality under the Nationality Act of 1940 (8 U.S.C. § 801(e) * by voting in a political election in a foreign state: to-wit: Mexico."

Legislation providing for expatriation has been known in the United States at least since 1865 when Congress provided for forfeiture of the right of citizenship of deserters and enlisted draftees who depart from their district or from the United States with intent to avoid draft into the armed forces.[2] The validity of the Act was assumed and its effectiveness as an expatriation statute applied in a series of cases.[3]

■ It is not difficult to appreciate that a nation which requires successful applicants for naturalization to take an oath that they will render either military or certain service in lieu thereof, to the United States, would logically impose expatriation upon native-born citizens who repudiate a like obligation. However, the most direct authority approving the right of Congress to fix the conditions for loss of nationality arose in a case which had nothing to do with military service. In Mackenzie v. Hare,[4] a former Nationality Act was upheld in provisions which brought about expatriation of a woman by mar-

* Now 8 U.S.C.A. § 1481.

2. Sec. 21 of the Act of March 3, 1865, 13 Stat. 490.

3. Kurtz v. Moffitt, 115 U.S. 487, 6 S.Ct. 148, 29 L.Ed. 458; In re Carver, C.C.,

142 F. 623; United States v. Snow, C.C. E.D.Tenn., 27 Fed.Cas. pages 1255, 1256, No. 16,350.

4. 239 U.S. 299, 36 S.Ct. 106, 60 L.Ed. 297.

366

riage to an alien. The Supreme Court ruled that this was within the power of Congress.

■ Expatriation was also accomplished by appellant's participation in a foreign election.[5]

Both grounds referred to in the quoted Conclusions of Law were within the statutes there referred to by the District Court. The right of Congress to enact such laws is clearly demonstrated by the cited cases.

The judgment is affirmed.

5. Acheson v. Wohlmuth, 90 U.S.App.D.C. 375, 196 F.2d 866; Acheson v. Mariko Kuniyuke, 9 Cir., 189 F.2d 741.