**Albert L. TROP, Plaintiff-Appellant,**

v.

**John Foster DULLES, as Secretary of State of the United States, and United States Department of State, Defendants-Appellees.**

**No. 63, Docket 24184.**

United States Court of Appeals Second Circuit.

Argued Oct. 11, 1956.

Decided Dec. 28, 1956.

Writ of Certiorari Granted March 4, 1957. See 77 S.Ct. 591.

Clark, Chief Judge, dissented.

Osmond K. Fraenkel, New York City, for plaintiff-appellant.

Margaret E. Millus, Leonard P. Moore, U. S. Atty., Eastern Dist. of New York, Brooklyn, N. Y., for defendants-appellees.

Before CLARK, Chief Judge, and HAND and SWAN, Circuit Judges.

HAND, Circuit Judge.

The plaintiff appeals from a judgment, summarily dismissing his complaint in an action under § 1503(a) of Title 8 U.S.C.A., for a judgment declaring him to be "a national of the United States." He is a native citizen, who was serving in 1944 in the United States Army in French Morocco; and the only question is whether he lost his "nationality" because he was convicted by the judgment of a court-martial of desertion "in time of war." The sentence of the court was that he was "to be dishonorably discharged from the service, to forfeit all pay and allowances due and to become due, and to be confined at hard labor * * * for three (3) years." Since the judgment of the district court was summary we are to accept as true the statements in the plaintiff's affidavit upon the motion that he had been imprisoned in Casablanca in May 1944 for an earlier breach of discipline, and found the condition so intolerable that in desperation he escaped. The next day he surrendered; and meanwhile he had made no attempt to leave the area under control of American troops. He had had no intention to "expatriate" himself or to become a national of any other country. Nor did he attempt to have any contact with any enemy of the United States, or to desert to any enemy of the United States or to any foreign country; and no claim was made in the court-martial proceedings that he had done so.

■ As will appear, we do not find enough doubt of the constitutionality of the statute to resort to any but the natural meaning of the words: i.e., that "in time of war" desertion of any kind results in "expatriation." Indeed, the proviso for possible restoration of "nationality" makes it impossible to suppose that the crime was confined to desertion to the enemy. It was true that at common law no subject could throw off his allegiance, and apparently the sovereign could not "expatriate" him. However, the Supreme Court, in Mackenzie v. Hare, 239 U.S. 299, 36 S.Ct. 106, 60 L. Ed. 297, held that the Act of 1907, 34 Stat. 1228, was valid which "expatriated" a woman who married an alien in this country; and that too although she had not intended to surrender her citizenship, and did not suppose that she was doing so. Again, in Savorgnan v. United States, 338 U.S. 491, 70 S.Ct. 292, 94 L.Ed. 287, a native citizen in 1940 married a citizen of Italy then in this country, and between 1941 and 1945 lived with him in Italy as his wife. She came back to this country on an Italian passport, and the action, like that at bar, was to obtain a judgment recognizing her continued status as a citizen, on the ground that, although she knew that she was being naturalized as an Italian (that being a condition, as her husband told her, of the validity of her marriage), she did not know that she would forfeit her American status, and did not intend to surrender it. Nevertheless the court held that under the Act of 1940 she had done so, because her "place of general abode" between 1941 and 1945 had been Italy, § 1101(a) (33), Title 8 U.S.C.A. See also Revedin v. Acheson, 2 Cir., 194 F.2d 482, certiorari denied 344 U.S. 820, 73 S.Ct. 17, 97 L.Ed. 638.

The important point in both these decisions is, not the especial "objective" facts that the court accepted as the test, but that on both occasions the citizen forfeited her "nationality," not only without supposing that she was doing so, but against her purpose. It is true that the act must not be that of an infant, Perkins v. Elg, 307 U.S. 325, 334, 59 S. Ct. 884, 889, 83 L.Ed. 1320: "Expatriation is the voluntary renunciation or abandonment of nationality and allegiance. It has no application to the removal from this country of a native citizen during minority. In such a case the voluntary action which is of the essence of the right of expatriation is lacking." We will also assume, *arguendo,* that the same is true when the act is under duress;[1] but when it is voluntary and the actor is *sui juris,* it is not necessary that he shall be aware that what he does will "expatriate" him, any more than it is in many other situations where the law imposes liability regardless of the actor's knowledge of the legal effects of his act.

■ There is still another reason why we may not limit the word "desertion" to desertion to an enemy of the United States. Section 1483(a) of Title 8 provides that, except for subsections (7), (8) and (9), none of the acts mentioned in § 1481, shall result in "expatriation" if they occur within the United States, unless they are followed by a "residence outside the United States." Subdivision (7) provides for a "formal written renunciation," subdivision (9) is for treason and subdivision (8) is the one at bar. Thus Congress provided that "in time of war" desertion within the United States should at once and unconditionally result in "expatriation" if determined by the conviction of a court-martial, and it would be most unreasonable to confine desertions "within the United States" to desertions to an enemy.

We have not considered, and do not consider, whether under the circumstances at bar "expatriation" was, or was not, a "cruel and unusual" punishment under the Eighth Amendment. The plaintiff did not suggest anything

1. See Mandoli v. Acheson, 344 U.S. 133, 73 S.Ct. 135, 97 L.Ed. 146.

**530**

of the kind in his complaint, or upon the motion for summary judgment; Judge Inch did not mention it in disposing of the motion, nor did the plaintiff do so in argument. The only part of the brief that by the widest latitude could be considered as so much as a vague intimation of the sort is a passage on page 11; and that did not mention the Amendment, but appears to be a part of the general argument that all involuntary expatriation is a denial of "Due Process of Law."

Judgment affirmed.

CLARK, Chief Judge (dissenting).

I am constrained to disagree with both the substance and the procedural form of the result here reached. Plaintiff-appellant has cited to us and obviously relied on the masterful analysis of expatriation legislation set forth in the Comment, The Expatriation Act of 1954, 64 Yale L.J. 1164, 1189–1199. I agree with the author's documented conclusions therein that punitive expatriation of persons with no other nationality constitutes cruel and unusual punishment and is invalid as such. Since I doubt if I can add to the persuasive arguments there made, I shall merely incorporate by reference. In my faith, the American concept of man's dignity does not comport with making even those we would punish completely "stateless"—fair game for the despoiler at home and the oppressor abroad, if indeed there is any place which will tolerate them at all.

On procedure I think we are bound as judges to face and decide this issue. It is unfair to the capable and experienced lawyer who presented this appeal to hold that he did not present this argument. For what other possible reason could he have made the specific and exact citation I have given above? His refreshingly brief statement, I conceive, needed no more. But I had supposed that we were bound in any event to do justice and administer the law as between the parties who have come before us.