# WALTER R. OSTBY v. H. H. SALMON AND OTHERS.[1]

April 26, 1929.

No. 27,157.

*George H. Lommen,* for appellant.
*Crassweller & Crassweller,* for respondents.

HOLT, J.

Plaintiff appeals from an order denying a new trial.

The action is to recover damages of defendants on the ground that as election judges at a village election held December 6, 1927, in the village of Biwabik they wrongfully and maliciously denied plaintiff the right to vote. At the close of the testimony plaintiff moved that the court direct the jury to assess damages in his favor, and defendants moved for a verdict in their favor. The latter motion was granted. The facts are these:

Plaintiff was born December 17, 1895, at Merritt (now Biwabik) Minnesota, and when 13 months old his parents moved to Canada

[1]Reported in 225 N. W. 158.

where plaintiff lived with them until 14 years old, and then returned to Biwabik where he has ever since resided, except for the time he was in the army during the World war. While a minor living with his father in Canada, the father became a British subject through naturalization. When plaintiff offered to vote at said election one of the defendants challenged his right to vote on the ground that he was not a citizen. He admitted to defendants his father's naturalization as stated. Thereupon defendants refused to permit him to vote, even when he offered to take his oath as provided by G. S. 1923 (1 Mason, 1927) § 422.

Upon the facts above stated the first question that presents itself is: Was plaintiff a citizen of the United States on December 6, 1927? If not, defendants rightly denied him the ballot. Plaintiff asserts that one born in this country thereby becomes a citizen thereof and cannot lose such birthright except by his own act or volition. The first sentence of art. XIV, § 1, of the amendments to the constitution of the United States, reads:

"All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the state wherein they reside."

As construed in U. S. v. Wong Kim Ark, 169 U. S. 649, 18 S. Ct. 456, 42 L. ed. 890, even a child of Chinese parents, not naturalized and not subject to naturalization, born while the parents are domiciled here, is a citizen of the United States. So by being born here plaintiff acquired citizenship and remained a citizen, unless by his father's naturalization during plaintiff's infancy they both became British subjects. If plaintiff thereby became expatriated the same as his father, he could again become a citizen of the United States only by naturalization. That the father, even if born here, became a British subject and could not by a mere return and even joining our army be restored to his birthright of American citizenship is held in Ex parte Griffin (D. C.) 237 F. 445. Congress by § 2 of the act of March 2, 1907 (34 St. 1228, c. 2534) declared:

"That any American citizen shall be deemed to have expatriated himself when he has been naturalized in any foreign state in con-

formity with its laws, or when he has taken an oath of allegiance to any foreign state."

In Reynolds v. Haskins (C. C. A.) 8 F. (2d) 473, 475, 45 A. L. R. 759, it was held that an American-born person naturalized in Canada becomes a British subject—an alien—and "could only reacquire American citizenship through the process of naturalization."

In Mackenzie v. Hare, 239 U. S. 299, 310, 36 S. Ct. 106, 60 L. ed. 297, Ann. Cas. 1916E, 645, the court rejected the proposition that no power was conferred upon congress to "restrict the effect of birth declared by the Constitution to constitute a complete right to citizenship" and held that [239 U. S. 311]:

"As a government the United States is invested with all the attributes of sovereignty. As it has the character of nationality it has the powers of nationality, especially those which concern its relations and intercourse with other countries." The court there said: "It may be conceded that a change in citizenship cannot be arbitrarily imposed, that is, imposed without the concurrence of the citizen."

That case related to an American-born woman marrying a British citizen domiciled here. She insisted that notwithstanding her marriage she was a citizen entitled to vote in California where she was born and always resided. The court held [239 U. S. 312] that she was a British subject notwithstanding her birth so long as she remained married, saying that the act of congress so declaring "is no arbitrary exercise of government. It is one which, regarding international aspects, judicial opinion has taken for granted would not only be valid but demanded. It is the conception of the legislation under review that such an act may bring the government into embarrassments and, it may be, into controversies."

Of course the assumption of marriage relation is voluntary. But there are voluntary acts of parents which bind the minor children as if voluntarily done by them. Thus the birth of children in England to parents born and living there could not prevent the children becoming citizens of the United States if the father brought them to this country and was naturalized while they were minors. Under the existing convention between the two countries the volun-

tary expatriation of a citizen of the one, by becoming naturalized under the laws of the other, transforms the minor children then residing with him from the citizenship of their birth to that of the country granting the father naturalization, 8 USCA, § 7 (R. S. § 2172). Whether or not his father was a citizen of the United States when plaintiff was born does not appear. He was domiciled here and moved to Canada, taking plaintiff, an infant, with him. When he was there naturalized, the law of that dominion (Rev. St. of Canada 1886, c. 113, § 15) provided:

"An alien to whom a certificate of naturalization is granted shall, within Canada, be entitled to all political and other rights, powers and privileges, and be subject to all obligations, to which a natural-born British subject is entitled or subject within Canada,—with this qualification, that he shall not, when within the limits of the foreign state of which he was a subject previously to obtaining his certificate of naturalization, be deemed to be a British subject, unless he has ceased to be a subject of that state in pursuance to the laws thereof, or in pursuance of a treaty or convention to that effect."

There can be no question but that his naturalization in Canada was an expatriation from the United States under the treaty hereinafter referred to, rendering him an alien should he return, even had he been American-born. Section 26 of the same chapter reads:

"If the father, or the mother being a widow, has obtained a certificate of naturalization within Canada, every child of such father or mother who, during infancy, has become resident with such father or mother within Canada, shall, within Canada, be deemed to be a naturalized British subject."

Plaintiff lays, stress upon the words "within Canada;" but those words are found in both sections, and there can be no doubt that under the section first quoted an American-born adult who is naturalized in Canada loses his American citizenship.

The convention or treaty with Great Britain proclaimed September 16, 1870 (16 St. 775) was made for the expressed purpose of

regulating the citizenship of citizens of the United States who had emigrated to British dominions and of citizens of the British dominions who had emigrated to the United States. Thereby the right of a citizen of the one country to expatriate himself and become the citizen of the other country to the compact was recognized. And once so expatriated by naturalization he might renew his residence in his former country and on his own application, and, on such conditions as that country may see fit to impose, be readmitted to his former citizenship. It seems to us that if the purpose of this treaty relation is kept in mind—to prevent controversies between the two nations as to citizenship—it is very desirable that the minor child of a father who changes allegiance by naturalization also change allegiance with him, so that if either he or the child should return to the country of their birth and renew their citizenship there the same procedure as to both must be followed. It tends to restrict the uncertain application of the dual allegiance rule to fewer persons, which would appear to be a desirable object.

There are expressions in some opinions of a dual allegiance applied to a child born in one country and removed to another by his parents, and also statements that a child born in this country cannot lose American citizenship except by his own voluntary act. In State ex rel. Phelps v. Jackson, 79 Vt. 504, 65 A. 657, 8 L.R.A. (N.S.) 1245, the court in substance held that one born an American citizen cannot be deprived of such citizenship by removal to Canada during minority, nor by any act of his father, and such citizenship would abide with him until, after attaining majority, he divested himself thereof by voluntary act. Ludlam v. Ludlam, 26 N. Y. 356, 84 Am. D. 193. But language of a decision must be interpreted in the light of the facts of the particular case, and the proposition of law therein necessary to state and apply. In no case to which our attention has been called has it been held since the treaty of 1870 with Great Britain and the existence of our present naturalization law that the minor child of a British subject residing with the father when he is here naturalized does not become as much of an American citizen as the father, though the child was born in a British dominion. We

apprehend the same would hold true in respect to a child born here and by its father taken to Canada where the father is naturalized while the child is a minor under his care and custody. Even the first declaration of intention has been held to inure to and be the act of the minor. Boyd v. Thayer, 143 U. S. 135, 12 S. Ct. 375, 36 L. ed. 103. It would seem that the treaty of 1870 and the legislation of the two countries did not accomplish all that was intended if uncertainty exists as to the citizenship of the American-born children of fathers who removed from here to some British dominion and there became naturalized while these children were minors living with them; and the same with the many children born in the dominion of Great Britain whose fathers brought them to the United States where, while minors living with their fathers, the fathers became naturalized.

The right of expatriation is now fully recognized both by Great Britain and the United States, and both countries have made it comparatively easy for one who by his own act or by that of his father while a minor through naturalization has lost citizenship in the country of his birth to be restored if he returns. In the instant case plaintiff has done all in his power to demonstrate his desire and worthiness to be restored. He returned at 14. He in good faith deemed himself a citizen. He voted and held office. And he not only accepted the privileges of citizenship but risked his life by joining the American army in the World war. It is easy for him to be restored to the citizenship he lost through his father's naturalization by complying with 8 USCA, § 392.

Having concluded that the learned trial court was correct in ruling that plaintiff became a British subject when his father became such, the other questions argued become moot, for defendants were then justified in refusing his vote. No legal wrong could be done plaintiff by preventing him from voting.

Order affirmed.