**JOST v. ACHESON, Secretary of State, et al.**

United States District Court
S. D. New York.
April 9, 1952.

42

William A. Zeck, New York City, for plaintiff.

Myles J. Lane, U. S. Atty. for Southern District of New York, New York City, Harold J. Raby and Ethel S. A. Davidson, Asst. U. S. Attys., New York City, of counsel, for defendants.

McGOHEY, District Judge.

The plaintiff, a native born citizen of the United States, having been declared to have expatriated himself by allegedly taking an oath of allegiance to the German Government, brings this suit pursuant to 8 U.S.C. § 903 for a judgment declaring him to be a national of the United States. The case was tried to the Court alone.

The complaint is dismissed as to the defendant McGrath because no evidence whatever was introduced that he or the Department of Justice at any time denied to the plaintiff "any right or privilege" within the meaning of the statute.

The complaint is dismissed as to the defendant Acheson because the evidence, which in my opinion is clear, unequivocal and convincing, leaves me in no doubt,[1] that the plaintiff did freely take an oath of allegiance to Adolf Hitler and to the German Reich and thus expatriated himself under the Nationality Act of 1907.[2]

The facts of the plaintiff's life and activities here and abroad came almost entirely from himself at different times and in the following forms: two statements to U. S. Army investigators in Germany in 1947; two questionnaires filed at an engineering school in Germany; and his testimony as a witness in his own behalf at the trial.[3] His present position is this. Whatever in the former versions is adverse to his interests should be disregarded in favor of so much of his present version as is helpful. Of course, whatever in his earlier statements is helpful or innocuous is to be accepted as true.

I am unable, however, to indulge the underlying assumption of this argument which is that Jost told the truth before me. By his own admission on the stand he thinks it is all right to lie when that is convenient to his purpose, and he acts accordingly. Moreover, his whole demeanor both on direct and on cross-examination showed him, in my opinion, to be utterly unworthy of belief except when corroborated. Although he is intelligent and obviously understands English well, he pretended to misunderstand simple questions. On cross-examination he persistently refused, unless directed, to answer responsively. At first he claimed that the statements he himself wrote out for the Army authorities in Germany were untrue when he made them. Later, however, when confronted with the statements on the stand and having read them, he admitted that everything he said in them was true when he said it and is true now. The situation here, then, is like that in United States ex rel. Bishop v. Watkins[4] where the Court had to select from various contradictory statements those which under all the circumstances seemed to it most likely to be true.

Discussion of matters in dispute will be aided, it is believed, by setting forth here the Court's findings of fact on matters which are either not in dispute or so clearly established by the evidence as to require no discussion.[5]

1. George Raymond Jost was born in the United States on July 31, 1918, of parents who, though born in Germany, had become naturalized United States citizens prior to his birth.

1. See Klapprott v. United States, 335 U.S. 601, 69 S.Ct. 384, 93 L.Ed. 266; Schneiderman v. United States, 320 U.S. 118, 63 S.Ct. 1333, 87 L.Ed. 1796; Bauer v. Clark, 7 Cir., 161 F.2d 397.

2. 34 Stat. 1228: "Sec. 2. * * * any American citizen shall be deemed to have expatriated himself * * * when he has taken an oath of allegiance to any foreign state."

3. Although at pretrial it was stipulated that the plaintiff was born in the United States, he nevertheless took the stand in support of his complaint. See Bauer v. United States, note 1, supra, 161 F.2d at page 401.

4. 2 Cir., 159 F.2d 505.

5. Findings of fact throughout bear Arabic numbers in sequence.

2. In 1922 and again in 1930 he visited Germany with his parents, during summer vacations.

3. He completed elementary school and high school, the latter on graduation in June, 1937. In the fall of 1937 he secured employment in a manufacturing plant in New York and continued to work there until some time in August, 1938.

4. In October, 1938, accompanied by his mother and, as a minor, traveling on her passport, he left the United States and went to Germany. There he remained until 1950 when, under a certificate of identity, he returned here to prosecute this suit. His mother returned to the United States at the end of 1938 or January, 1939.

5. From October, 1938, until September or October, 1939, he lived in Munich and worked as a mechanic in a Ford repair shop in that city. During this period he associated closely and continually with a cousin George Rauh who was concededly a member and probably some kind of official of the Sturm Abteilung (Storm Troop or Storm Group), which is hereafter referred to as the S. A. Jost accompanied this cousin to meetings, social events and sports meets held by the S. A. He acquired and wore at least part of the uniform of the S. A. He participated as a member, with other members, in athletic and semi-military training conducted and directed by the S. A.

6. In October, 1939, he was admitted to a school of engineering in Augsburg, Germany. He remained there until he was graduated in February, 1943. During the summer vacations he worked at jobs to which he was assigned by the school authorities. Some of his assignments consisted of work on farms, some in manufacturing plants.

7. He never registered for American Selective Service after the law went into effect in 1940.

8. At the beginning of the fall term in 1940 he filed with the school a personal history questionnaire. Item 13 thereof called for information concerning member- ships in various organizations. In answer to this Jost stated that since April, 1940, he was a member of the National Socialist Deutsche Studentenbund (Federation of German Students) hereafter called the Studentenbund. He also stated that he was a member of S. A. since 1939, that his membership number was 13 and that his "position" was "S. A. Man." Item 22 asks "What sports insignia have you acquired?" Jost stated in answer "S. A. sports insignia."

9. At the beginning of the 1941 fall term Jost again filled out a similar questionnaire and again in answer to Item 13 gave the same information as he had given in 1940, except that under the words "S. A. Man" he added the word "resigned." Item 22 was not answered.

10. Upon his graduation from the school the "Labor Office" at which he had registered sent him to and he received employment in a manufacturing plant in Augsburg which was making lathes and special machines which were used in munitions factories. This plant was bombed out in March or April, 1944, and thereafter reestablished at Ebingen, a town in or near the Black Forest. Jost went there and continued at his employment until a few weeks before the surrender which occurred on May 8, 1945.

11. He then left Ebingen and made his way back to the vicinity of Augsburg. He "hid out" in the country but he was in communication with a girl in Augsburg to whom he is now married. This girl later brought Jost's brother Robert to him at his hiding place. Robert was a sergeant in the 7th U. S. Army which occupied the Augsburg area late in April, 1945. Robert located friends of his parents in Augsburg and inquired for the plaintiff. These friends put him in touch with the girl.

12. A short time after the surrender Jost secured civilian employment with AMGOT[6] as a mechanical engineer and interpreter. He was discharged the following July because he had falsified his employment questionnaire by denying his membership in the Studentenbund.

6. American Military Government of Occupied Territory.

13. He had made application for enlistment in the U. S. Army. This appears never to have been acted on. Some time later he again applied, was accepted on July 11, 1946, and assigned to a Military Police detachment in which he served for about twenty months and rose to the grade of sergeant.

14. Some time after his enlistment the Counter Intelligence Corps of the Army commenced an investigation of Jost's prior activities in Germany. He was questioned from time to time and on April 11, 1947, he wrote out a statement. He supplemented this with another handwritten account on April 16 dealing particularly with his connections with S. A. On March 12, 1948, he received an Undesirable Discharge "Because of Expatriation."

15. Some time later in 1948 Jost applied for a passport to travel to the United States as an American citizen. This was refused on the ground that he had expatriated himself.

Jost's explanation of the questionnaires he filed at Augsburg is interesting and typical. He does not deny filing them, nor does he deny making the statements they contain concerning his S. A. and Studentenbund memberships. He says now, however, that his claim of S. A. membership was a lie; that he deliberately lied because he "had to make an impression in order to study." He admits joining the Studentenbund, but again says he "had" to join in order to "get along in [his] studies." He does not claim that this was a formal condition of admission to the school, but that it was "required * * * very strictly" by the students. All this is in support of his argument that he was under duress during all the time he was in Germany and helpless to escape it. He even suggests that there was compulsion in his going to Germany in 1938. As to that he says that jobs were scarce in the United States in the fall of 1938; that, although he wanted very much to study mechanical engineering, he could not get into school here. He suggests, moreover, that there was some family financial problem in getting to school here. The argument runs thus: Jost wanted to study mechanical engineering. To do so he had to go to school in Germany; to stay in school and get the full benefit of it he had to impress people by joining certain organizations. Therefore, any pledges or oaths of allegiance to Hitler or Germany which these memberships may have entailed were not made voluntarily but under duress.

This whole argument falls apart on examination. To begin with, there has been no showing that he was refused in any school other than the New York Merchant Marine Academy. And even as to that we have only his own uncorroborated word, which I do not accept. The same is true of the suggested family financial problem. Both these circumstances, if true, could easily have been established through testimony from the Academy authorities and from his parents with whom he is now living. Any lack of employment opportunity, if such in fact existed, is clearly not available to Jost because he was actually working in a manufacturing plant up to August, 1938, and he does not claim to have been discharged.

Manifestly then he was under no compulsion to go to Germany to study. Neither was he under any compulsion to stay there. He never once tried to leave until 1948, after his discharge from the Army. Accordingly, I make these further findings:

16. Jost's answers in the questionnaires filed at the school in Augsburg in 1940 and 1941 were true.

17. Jost made these answers freely and without any kind of compulsion or duress.

18. In 1940, while a student at the engineering school at Augsburg, Jost freely joined the Diesel Studentenbund, which was the school's branch or chapter of the National Socialist Deutsche Studentenbund.

Despite his admissions in the questionnaires and those in his statements to the Army investigators, Jost insists that he never joined the S. A. but was only, at most, a participant in the sports events. The evidence, in my opinion, completely belies this position. The truth and free character of the questionnaires has been

found. There remains to be considered Jost's statements to the Army investigators.

These statements were objected to when offered on the ground that they were not made voluntarily, but were coerced. This objection was made while Jost was under cross-examination, and his counsel was permitted to inquire of him on the point. This inquiry developed the following: Jost was merely directed by his commanding officer to present himself to the investigators for questioning; he was not directed to make any statement; his questioner confronted him with his school questionnaires and reminded him that in them he had admitted his membership in the S. A. and the Studentenbund; and he was then asked how he reconciled his current denials and evasions with those prior admissions. Jost further testified that he was not advised that he need not make any statement. For the reasons I have already set forth, I did not and do not believe him. The statements were received. Later the investigator who questioned Jost was called by the defense. He testified that Jost was told that his past life and activities in Germany were being investigated and was advised that he was not obliged to make any statement; that he was not badgered; that he was asked to cooperate but told that he was not obliged to do so. The investigator, who is no longer in the military service, impressed me as truthful and honest. I accept his testimony. Accordingly, this further finding is made:

19. The statements dated respectively April 11 and April 16, 1947, which Jost wrote out by his own hand at Augsburg, Germany, for the United States Army, were made voluntarily and without duress. They were true when made and are true now.

After careful consideration of the questionnaires, the statements given to the Army investigators and Jost's testimony at the trial, this further finding is made:

20. Jost freely joined the S. A. in Munich, Germany, in the fall of 1938. He did so knowingly and signed the necessary papers, complied with the necessary conditions and fulfilled all required procedures for full membership, including the swearing of allegiance to Adolf Hitler and the Nazi Party.

Jost testified that in the fall of 1939 his knowledge of the German language was not good and that his cousin, George Rauh, handled all the matters connected with his "participation" in affairs of the S. A. sports events and meetings. Even if Jost is to be believed in this, it is to the last degree incredible that Jost did not ask Rauh what was going on and that he did not translate for Jost the contents of the papers Jost signed. Jost can't now be heard to say that his alleged deficiency in German relieves him of his deliberate acts.[7]

The defendant called Dr. Fritz E. Oppenheimer as an expert on German law and Nazi organization. He had had a long career at the bar in Germany before being expelled on "racial" grounds in 1936. Thereafter he was admitted as a barrister at the English bar. He came to the United States in 1940. He entered as a private in the United States forces, rose to Lt. Colonel and served on the staff of Supreme Headquarters in Europe during and after the war. Thereafter he served as a Special Assistant in the State Department on matters relating to Germany and Austria. He is no longer in the Government service and it was obvious to me that he was completely disinterested. On the basis of his testimony, which I accept, the following findings are made.

21. The Studentenbund was a formation of the Nazi Party consisting of students who constituted a hard core of active adherents to National Socialism and to the Nazi Party. Admission to the Studentenbund entailed and demanded an oath of allegiance to the Fuehrer Adolf Hitler and to the Nazi Party.

22. Under German law as it existed in 1939 and 1940 Hitler, the Nazi Party and the German State were one, and an oath of allegiance to Hitler constituted an oath of allegiance to the German State.

23. Accordingly, I find that Jost in voluntarily and knowingly joining the S. A.

7. Revedin v. Acheson, 2 Cir., 194 F.2d 482.

and the Studentenbund knowingly and voluntarily swore allegiance in each instance to the German State.

### Conclusions of Law.

I. The plaintiff George Raymond Jost expatriated himself by taking an oath and making a formal declaration of allegiance to a foreign state, to wit, Germany.

II. The defendant Dean Acheson, Secretary of State, has not denied or deprived the plaintiff of any right or privilege as a national of the United States.

III. The defendant J. Howard McGrath, Attorney General, has not denied or deprived the plaintiff of any right or privilege as a national of the United States.

IV. The defendants and each of them are entitled to judgment dismissing the complaint.

Submit decree.