**John Foster DULLES, as Secretary of State of the United States, Appellant,**

**v.**

**Sukejiro KATAMOTO, Appellee.**

**No. 15202.**

United States Court of Appeals
Ninth Circuit.

June 6, 1958.

Louis B. Blissard, U. S. Atty., Charles B. Dwight, III, Asst. U. S. Atty., Honolulu, Hawaii, Lloyd H. Burke, U. S. Atty., San Francisco, Cal., for appellant.

Shigeto Kanemoto, Honolulu, Hawaii, for appellee.

Before DENMAN, FEE and HAMLEY, Circuit Judges.

DENMAN, Circuit Judge.

This is an appeal from a judgment of the District Court for the District of Hawaii, sitting without a jury, in a 8 U.S.C. § 903[1] case. The questions presented are: (A) Does the law of Japan require one to be solely a Japanese national to teach English in a Japanese school and hence require of Katamoto, a dual citizen of the United States and Japan, born in Hawaii of Japanese parents, that he surrender his United States citizenship to teach English there? (B) Should § 401(d) of the Nationality Act of 1940 [*] be construed to deprive of his American citizenship a dual American-Japanese citizen who accepts employment as a school teacher in Japan? (C) Did Katamoto's six years of residence in Japan deprive him of his American citizenship?

*The heavy burden of proof on the Government seeking to deprive Katamoto of his citizenship under § 401(d) of the Nationality Act of 1940.*

That act provides:

"§ 401. *General means of losing United States nationality.* A person who is a national of the United States, whether by birth or naturalization, shall lose his nationality by:

\* \* \* \* \* \*

"(d) Accepting, or performing the duties of, any office, post, or employment under the government of a foreign state or political subdivision thereof for which only nationals of such state are eligible. \* \* \*"

■ The heavy burden of proof in such a denaturalization case has been recently restated by the Supreme Court in Mitsugi Nishikawa v. Dulles, 356 U.S. 129, 133, 78 S.Ct. 612, 615, 2 L.Ed.2d 659, as follows:

"Likewise, the parties are agreed that when a citizenship claimant proves his birth in this country or acquisition of American citizenship in some other way, the burden is upon the Government to prove an act that shows expatriation *by clear, convincing and unequivocal evidence.* In Gonzales v. Landon, 350 U.S. 920, 76 S.Ct. 210, 100 L.Ed. 806, we held that the rule as to burden of proof in denaturalization cases applied to expatriation cases under Section 401 (j) of the Nationality Act of 1940. We now *conclude that the same rule should govern cases under all the subsections of Section 401.*" [Emphasis added.]

---

1. Sections 901–903, 904, Title 8 U.S.C. involved herein were repealed in 1952.

66 Stat. 280, now 8 U.S.C.A. § 1101 et seq.

\* Now 8 U.S.C.A. § 1481(a).

A. *The Government has not maintained its heavy burden of proof of the fact that under the Japanese law a dual citizen of Japan and the United States could not teach the English language in a Japanese village school without surrendering his United States citizenship.*

██ We judicially recognize that Japan is a civilized state having a constitution, a legislative body, with its statutes, courts administering laws with lawyers and judicial decisions and that the law of Japan is that one born in a foreign country of Japanese parents is a Japanese citizen. The Government offers no proof of any existing constitutional provision, statute, regulation, or decisions of a court requiring the abandonment by such a dual national of all but his Japanese citizenship before he can teach the language of his other nationality. Moreover, the Government did not avail itself of the usual method of proof of a foreign law, i. e., by the testimony of an experienced Japanese practitioner.

Its failure to produce any such statements of the law or lawyer witnesses, of the condition of the law makes its contention open to the inference that if produced they would have shown that such a Japanese-American citizen could teach a language foreign to Japan without ceasing to be an American citizen. 2 Wigmore on Evidence §§ 285–291 (3d Ed. 1940).

The copy of the School Education Law which the Government relies upon provides in Article 8:

"Matters regarding certificates and other qualifications of principals and teachers shall be decided by the competent authorities."

And in Article 106, that, "The competent authorities under the following Articles and paragraphs shall * * * be the Minister of Education * * * Article 8 * * *." The Government did not prove that only by his abandonment of his American citizenship could Katamoto teach in the public schools. It did not seek the deposition of the Minister of Education as to his regulations or orders regarding "qualifications of principals and teachers."

Katamoto taught English without a teacher's license. The Government produced the Japanese Teacher License Ordinance which expressly makes provision for "any person", and hence a dual Japanese American citizen, to teach a non-Japanese language in Article 2, providing, "However, *any person*, even if he does not possess the license, may be appointed a teacher in accordance with the provisions as stipulated by the Education Minister."

That such a provision for foreign language teachers should not exist seems most unlikely. Japan, by the 1940s, was one of the world's largest manufacturers and exporters of manufactured goods to countries of many languages which were its customers. World War II increased its power to manufacture. It would be against its obvious interest that it would forbid the teaching of all their customers' languages to its nationals by such a Japanese-American dual citizen.

The Government produced a copy of an exhibit of a writing from one Japanese government official to another speaking of a *former* constitution, "the *old* constitution", under which "possession of Japanese nationality was required to become government *officials* of Japan." (Emphasis added.] Though this is hearsay the obvious inference is that the existing constitution does not make such a requirement, particularly so since the Government offered no part of the new constitution. Further, it admits in its brief that the Katamoto teaching was an "employment" and does not claim it is an office which would have been covered by the old constitution. Also the contention has no relevance to the issue whether under the Japanese law *"only nationals"* and not *dual* nationals are permitted to teach.

The Government offered the statement of the principal of the junior high school concerning Katamoto's employment there as follows:

"It is further added that according to the Educational Law and the

Teacher's License Law, only those who have Japanese nationality can hold the position of local instructors and that the foregoing applicant was appointed local instructor temporarily in accordance with the regulations relative to the enforcement of the Educational Law."

Here we have a hearsay opinion of the law not from a lawyer but from a school principal which, upon examination, shows that he did not know what was contained in the Education Law and the Teacher's License Law, both as we have seen being in evidence. There is nothing in either set of laws from which it can be inferred that such a Japanese-American without a license cannot be a teacher in such a school. On the contrary, as seen, the inference is against that contention. Again we have testimony irrelevant to the issue whether the Japanese nationality must be exclusive.

The Government relied on the statement of Katamoto, that he was told that *"normally* the School Educational Law and the Teacher's License Law requires Japanese nationality as one of the conditions" of school teaching. Neither of these laws has such a requirement. Hence the district court was entitled to treat Katamoto's answer "Yes" to the question by the State Department officers, "Was the office post or employment held by you one which only nationals of Japan were eligible to hold", as irrelevant to the issue whether such a dual national must give up his American citizenship to teach in Japan. If relevant, it was merely erroneous hearsay of a person who "certainly was not qualified to express a conclusion as to Japanese law." Naito v. Acheson, D.C.S.D.Cal.1952, 106 F.Supp. 770, 774. The court as well could have accepted another of Katamoto's statements that "I had always known that foreigners were employed as school teachers", as establishing the law in his favor.

The District Court did not err in holding that the Government had not sustained its heavy burden of proof that the Japanese law requires exclusive Japanese citizenship for a teacher of English in a government school.

(B) *Under § 401(d) a dual American-Japanese citizen retains his American citizenship though accepting Japanese government employment in teaching English in one of its schools.*

The Government specified as error the action of the District Court "in ruling that subdivision (d) of § 401, of the Nationality Act of 1940 does not apply to dual nationals" and its brief states that "even a casual reading of the expatriation statutes leads one to the conclusion that Congress expressly designed these statutes to discourage dual nationality."

We agree that the District Court erred in so ruling but cannot accept the government's contention that § 401(d) and the other expatriating statutes were expressly designed to discourage dual nationality.

The Nishikawa case at page 135 also requires of us that in construing § 401(d) as to such a dual national as Katamoto "the facts and the law should be construed as far as reasonably possible in favor of the citizen." Instead of treating such a statute as designed to discourage dual nationality, in Kawakita v. United States, 343 U.S. 717, on pages 723–725, 72 S.Ct. 950, at page 956, 96 L.Ed. 1249, the Court states that " *   * The concept of dual citizenship recognizes that a person may have and exercise rights of nationality in two countries and be subject to the responsibilities of both. The mere fact that he asserts the rights of one citizenship does not *without more* mean that he renounces the other. *   * [D]ual citizenship *   *   * could not exist if the assertion of rights or the assumption of liabilities of one were deemed inconsistent with the maintenance of the other."

In the Kawakita case there was "more" than the innocent exercise of a natural right. The "more" were the facts that Kawakita committed treason against the

United States since while in Japan during World War II he abused American prisoners for the purpose of getting more work from them in producing war materials for Japan, overt acts giving aid and comfort to our enemy.

Here the mere fact that Katamoto "asserts the rights of one citizenship", i. e., to teach school in Japan, "does not without more mean that he renounces" his American citizenship. He was "without [the] more" of the Kawakita case. Jalbuena v. Dulles, 3 Cir., 254 F.2d 379.

(C) *Katamoto's six years' residence in Japan did not deprive him of his American citizenship.*

■ It was suggested at the hearing in this court that Katamoto had lost his citizenship by his residence in Japan for several years under 8 U.S.C. § 802, providing:

"Presumption of expatriation. A national of the United States who was born in the United States or who was born in any place outside of the jurisdiction of the United States of a parent who was born in the United States, shall be presumed to have expatriated himself under subsection (c) or (d) of section 801, when he shall remain for six months or longer within any foreign state of which he or either of his parents shall have been a national according to the laws of such foreign state * * *" Now 8 U. S.C.A. § 1482.

Section 801(c) concerns expatriation by serving in the armed forces of a foreign nation. Katamoto served in the Japanese forces in World War II, but the District Court held, in testimony in part viva voce, that he did so under coercion of the Japanese government and Dulles does not question this decision. Also since we hold that he did not expatriate himself under Section 801(d), Section 802 is not applicable.

The judgment is affirmed.